IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN E. LIDDLE, | ) | CASE NO. 5:09 CV 587 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| TIM BRUNSMAN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
    A.    Underlying facts and state trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
    B.    Direct Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-
    C.    Application to reopen . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-
    D.    Federal habeas petition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
    A.    Preliminary observations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
    B.    Standard of review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
          1.    The standards for federal habeas review . . . . . . . . . . . . . . . . . -15-
          2.    Ineffective assistance of appellate counsel . . . . . . . . . . . . . . . . -17-
          3.    Modified AEDPA deference . . . . . . . . . . . . . . . . . . . . . . . . . . -19-
    C.    Application of standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-
          1.    Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-
          2.    State law on admissibility of expert testimony in child abuse cases
               . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-
          3.    Nature of the harm if a Boston violation occurs . . . . . . . . . . . . -25-
          4.    Application – there was no Boston violation in Dr. Kovalcik's direct
               testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -27-
          5.    Application – there was no Boston violation in Dr. Kovalcik's
               testimony during re-cross-examination . . . . . . . . . . . . . . . . . . -30-
          6.    Even if the Court should conclude that a Boston error occurred in either
               Dr. Kovalcik's direct testimony or on re-cross-examination, Liddle has
               not shown, under Strickland, that the state appeals court unreasonably
               found that, but for his counsel's failure to object to that testimony, the
               results at trial would not have been different. . . . . . . . . . . . . . -34-

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -36-

## Introduction

Before me by referral[1] is the petition of John E. Liddle for a petition of habeas corpus filed under 28 U.S.C. § 2254.[2]  Liddle is incarcerated at the Lebanon Correctional Institute serving a life sentence, with the possibility for parole after 20 years, for two counts of rape and two counts of gross sexual imposition, such sentence imposed by the Summit County Common Pleas Court after his 2006 conviction at a jury trial.[3]

In his petition, Liddle asserts one ground for relief, arguing that his appellate counsel provided ineffective assistance by failing to raise the claim that trial counsel was ineffective for not objecting to testimony from a physician who allegedly gave an opinion as to the credibility of the victim.[4]  Liddle argues that his appellate counsel should have claimed that his trial counsel was ineffective for not objecting to the physician's testimony that purportedly violated the Ohio Supreme Court's ruling in *State v. Boston*,[5] which bars an expert from giving an opinion as to the truthfulness of a statement by a child declarant.[6]  In

---

[1] ECF # 3.

[2] ECF # 1.

[3] *Id.* at 2.

[4] *Id.* at 6.

[5] *State v. Boston*, 46 Ohio St. 3d 108, 545 N.E.2d 1220 (1989), overruled, in part, on other grounds by *State v. Muttart*, 116 Ohio St. 3d 5, 875 N.E.2d 944 (2007).

[6] *Id.*

the State's return of writ,[7] the State asks that Liddle's claim be denied on the ground that the state court did not unreasonably apply the clearly established federal law of *Strickland v. Washington*[8] in denying this claim.[9]

       For the reasons that follow, I recommend that Liddle's claim be denied.

## Facts

**A.**    **Underlying facts and state trial**

       The underlying facts as found by the state appeals court[10] address allegations of sexual abuse made against Liddle by the victim, a minor female under age 13 at the time of the abuse, who is referred to in the record as R.B.[11]

       Essentially, Liddle first came to know R.B. in 1994 when she was three years old and Liddle, whose wife had recently died, joined the same church as the victim's family.[12] Liddle's relationship with the victim's family grew and, following the 1994 divorce of the victim's parents, R.B.'s mother began regularly asking Liddle for help with home

---

    [7] ECF # 6.

    [8] *Strickland v. Washington*, 466 U.S. 668 (1984).

    [9] ECF # 6 at 9.

    [10] Facts found by the state appellate court on its review of the record are presumed correct by the federal habeas court.  28 U.S.C. § 2254(e)(1); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

    [11] ECF # 6, Attachment (state record) at 70-71 (appeals court opinion).

    [12] *Id*.

maintenance and to babysit the victim and her two older sisters.[13]  By 1999, Liddle had moved into the home of the victim's grandmother and was regularly attending family events with the victim and her family.[14]

In 2000, when R.B. was nine, she told her mother and grandmother something about her experience with Liddle that resulted in him being asked to move out of the grandmother's house, although no police report was filed.[15]  When R.B. father began to seek custody of R.B. four years later in 2004, she told him that Liddle had been abusing her for years.[16]  He then immediately initiated counseling for her that led to the filing of a police report and contact with medical and social service professionals.[17]   After an investigation, Liddle was indicted in 2005 on two counts of rape of a child under the age of 13 and two counts of gross sexual imposition of a child.[18]

At trial, R.B. herself, then 14, testified.  She stated that Liddle gained her trust, such that she viewed Liddle as a father figure and hoped he would one day marry her mother.[19]

---

[13] *Id*. at 71.

[14] *Id*.

[15] *Id*.

[16] *Id*. at 72.

[17] *Id.*

[18] *Id*. at 67

[19] *Id*. at 73.

-4-

The victim further testified that as a young girl Liddle gave her kisses, hugs, ran his hands through her hair, and let her sit on his lap to watch television.[20]

She then explained, however, that by the time she was four years old Liddle would place his hands under her clothing to touch her bare skin on her private parts, including her "chest, butt, and vaginal area," and would remove his hands if someone else came into the room.[21]  In addition, R.B. testified that Liddle also kissed her on the lips and neck and asked her to do the same, and to touch Liddle's penis over his clothing.[22]  Moreover, the victim stated that Liddle often used handcuffs or metal bars with leather straps at the ends to restrain her arms or to hold her legs apart, while Liddle told her they were playing the game of cops and robbers and that she was in jail.[23]  R.B. stated that she did not question this behavior for a long time but eventually realized that his kisses were longer and more intimate like a boyfriend and unlike those of a relative.[24]

In addition to the behavior described above, R.B. specifically testified that Liddle inserted a portion of his finger into her vagina on two occasions, urging her not to tell anyone.[25]

---

[20] *Id.*

[21] *Id*.

[22] *Id*.

[23] *Id*. at 74.

[24] *Id*.

[25] *Id.*

Other witnesses supported R.B.'s account.  Dianne Russo, a medical social worker, testified that, after interviewing R.B. in 2004, she concluded that R.B. was a victim of sexual assault.[26]  Furthermore, Jeannette Behm, a licensed counselor with 35 years experience, stated that, although  R.B. was initially too embarrassed in their conversations to discuss the instances of digital penetration, she eventually did acknowledge these events.[27]  In addition, Detective Richard Armsey, of the Summit County Sheriff's Department, testified that Liddle "basically admitted" to engaging in inappropriate touching and to the two instances of digital penetration.[28]

Finally, and of particular importance here, Dr. Jason Kovalcik, a pediatric physician with experience in examining "hundreds" of children suspected of being sexually abused,[29] testified, based on his physical examination of R.B., a family history taken from R.B.'s father, and his notes taken during R.B.'s interview with Dianne Russo, the social worker, that, although there was no physical evidence of the alleged sexual abuse five or six years after the events, in his professional medical opinion, R.B. had been sexually abused.[30]

---

[26] *Id.* at 74-75.

[27] *Id*. at 75.

[28] *Id*. at 75-76.

[29] ECF # 7, Attachment (transcript of testimony of Dr. Jason Kovalcik) at 452.  (The page reference is to the transcript page, not the page in the attachment.)

[30] *Id*. at 473.

Moreover, R.B.'s two older sisters testified, with her eldest sister stating that Liddle made her uncomfortable when he gave R.B. lingering kisses "and not just a peck."[31]  She stated that she told Liddle his behavior was inappropriate, as well as telling her mother about Liddle's behavior.[32]  The middle child testified similarly about watching Liddle with R.B. She told the jury in particular that she witnessed R.B. in restraints.  She demanded that Liddle take the device off her sister.[33]  She further testified that she also told her mother about what she had seen and urged R.B. to "tell her the rest."[34]

For his part, at trial Liddle denied any inappropriate behavior or touching.  While he admitted kissing and hugging the girls and owning handcuffs, he testified that his behavior was not inappropriate and that the handcuffs were not "sex toys."[35]

The jury found Liddle guilty on all counts.[36]  The trial judge sentenced Liddle to life in prison on each of the two rape convictions, with such terms to be served concurrently, and to five years in prison for each count of gross sexual imposition, such terms to be served

---

[31] ECF # 6, Attachment (state record) at 76.

[32] *Id.*

[33] *Id.* at 77.

[34] *Id.*

[35] *Id.*

[36] *Id.* at 68.

concurrently with each other and consecutively to the life terms.[37]  The trial court also found Liddle to be a sexual predator.[38]

## B.    Direct Appeal

Liddle, now represented by different counsel from that at trial,[39] timely appealed[40] his conviction to the Ohio Ninth District Court of Appeals raising the following assignments of error:

1.    The trial court committed reversible and plain error by failing to object to the testimony of similar acts, in violation of Rules of Evidence 403, 404(B) and a failure to object to the testimony of Defendant's sexual reputation and similar acts in violation of Ohio Revised Code § 2907.02(D).  The trial court also failed to determine admissibility of all similar act testimony three days prior to trial, as required in § 2907.03(E) and failed to grant the Defendant's motion for a mistrial.[41]

2.    The trial court's verdict went against the manifest weight of the evidence because the Prosecution failed to produce sufficient evidence to support the elements of rape and gross sexual imposition.[42]

_____

[37] *Id.*

[38] *Id.*

[39] *See*, *id*. at 3 (journal entry of sentencing noting that Liddle was represented by defense counsel Andrew Kinder) and 7 (notice of appeal showing that Liddle was then represented by Donald Gallick).

[40] *See*, *id.* at 68 (the Ohio court of appeals affirmatively noted that Liddle "filed a timely notice of appeal").

[41] *Id*. at 9 (Liddle's appellate brief).

[42] *Id.*

-8-

The Ohio Court of Appeals affirmed the trial court's judgment on both issues, overruling Liddle's two assignments of error.[43]

As a result, Liddle, now acting, as here, through the Ohio Public Defender, timely appealed the appellate court's decision to the Ohio Supreme Court,[44] raising the following three propositions of law:

1.  An accused is deprived of a fair trial when the trial court erroneously admits unfairly prejudicial and irrelevant other-act evidence.  Fifth and Fourteenth Amendments, United States Constitution; Sections 10 and 16, Article I, Ohio Constitution.[45]

2.  When an appellate attorney fails to raise numerous, meritorious issues in a criminal defendant's one and only direct appeal, and when appellate counsel instead raises weak, unconvincing issues, the attorney renders inadequate assistance, in contravention of the Fourteenth Amendment to the United States Constitution, and Section 16, Article I of the Ohio Constitution.[46]

3.  In a case involving allegations of sexual assault upon a child, the State may not present expert medical testimony that the child was sexually abused, when there is no physical medical evidence to support that conclusion, as such testimony constitutes veracity testimony, and is inadmissible under *State v. Boston* (1989) 46 Ohio St. 3d 108. The erroneous admission of expert medical opinions testimony on the veracity of a child witness contravenes the Due Process Clauses of the state and federal constitutions.[47]

---

[43] *Id*. at 94.

[44] *Id.* at 98-100.

[45] *Id*. at 103.

[46] *Id.*

[47] *Id*.

-9-

The State did not respond in opposition, and the Ohio Supreme Court thereupon denied Liddle leave to appeal, dismissing the case as not involving any substantial constitutional question.[48]

## C.    Application to reopen

While his direct appeal was pending, Liddle, represented again by the state public defender,  filed an application in the Ohio appeals court for reopening his appeal under Ohio Appellate Rule 26(B) (2)(e).[49]  In his Rule 26(B) application, Liddle alleged that he received ineffective assistance from appellate counsel when that attorney failed to raise the following assignments of error in the direct appeal:

1.    The trial court erred when it allowed the State to present expert medical testimony that the child was sexually abused, when there was no physical medical evidence to support that conclusion.  The testimony constituted veracity testimony, and was inadmissible under *State v. Boston* (1989), 46 Ohio St. 3d 108, and its progeny.  The erroneous admission of expert medical opinion testimony on the veracity of a child witness contravenes the Due Process Clauses of the state and federal constitutions.  (Tr. 469, 471, 479).[50]

2.    When a prosecutor's pattern of misconduct throughout a trial deprives a criminal defendant of a fair trial, reversal is warranted.  *State v. Keenan* (1993), 66 Ohio St. 3d 402, *cert. denied* (1998) 525 U.S. 860.  Fifth and Fourteenth Amendments, United States Constitution; Sections 10 and 16, Article I, Ohio Constitution.  (Tr. 706, 707-708, 711, 713, 715-716, 717, 762, 765, 767, 769-771).[51]

---

[48] *Id*. at 146.

[49] *Id.* at 147-56.

[50] *Id*. at 150.

[51] *Id.* at 151.

-10-

3.　　The State's failure to articulate differentiation between identically worded counts in the indictment deprived Liddle of his right to due process of law, as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.[52]

4.　　Trial counsel renders constitutionally deficient performance during a criminal trial when he fails to object to the erroneous admission of veracity testimony; when he fails to object to numerous improper remarks made by the prosecutor during closing argument; when he fails to object to an unconstitutionally vague indictment; and when he stipulates to the State's amendment of the indictment to allege a greatly expanded time frame for one of the offenses.　When the State's evidence of guilt is not strong, trial counsel's deficient performance is prejudicial.　Sixth and Fourteenth Amendments, United States Constitution; Section 10, Article I, Ohio Constitution.　(Tr. pp. 3-6, 469, 471, 479, 706, 707-708, 711, 713, 715-716, 717, 761, 762, 765, 767, 769-771).[53]

The State filed a short brief opposing the motion to reopen,[54] arguing that "there is nothing in the record to demonstrate that any of the these assignments of error have merit."[55] The Ohio appeals court, in turn, denied the motion.[56]  In so doing, the court initially noted that the test for determining ineffective assistance of appellate counsel in Ohio is based on the federal standard articulated in *Strickland v. Washington*,[57] which requires both that

---

[52] *Id.* at 152.

[53] *Id.* at 153.

[54] *Id*. at 265-67.

[55] *Id*. at 266.

[56] *Id.* at 268-78.

[57] *Id*. at 268-69, citing *State v. Spivey*, 84 Ohio St. 3d 24, 25, 701 N.E.2d 696, 697 (1998) (citing *Strickland*, 466 U.S. 668).

appellate counsel be shown:  (1) to have been deficient for not originally raising the issues now asserted, and (2) that the claimant was prejudiced by that performance because there was a reasonable possibility of success had those issues been raised.[58]

With respect to the deficient performance element, the state appeals court did not directly consider whether the opinion testimony here violated the rule in *Boston*, which would have potentially made its admission grounds for reversal.  Instead, the state court assumed that a competent attorney could have made a strategic choice to undermine any adverse effect of the opinion testimony through cross-examination of the expert rather than by directly objecting to its admission.[59]  Thus, because the appeals court concluded that trial counsel conducted a "careful and pointed cross-examination" of the expert, it found that there was no deficient performance, despite the failure to object.

As to the prejudice prong, the appeals court found that because, unlike *Boston*, the victim herself testified at trial, there was no prejudice from the expert testimony because the jury could evaluate the credibility of the victim for itself, as well as the credibility of the expert.[60]  Moreover, because there was "significant corroborating evidence before the jury" as to Liddle's guilt, the appeals court concluded that there was not a reasonable possibility

---

[58] *Id*. at 269.

[59] *Id*. at 271.

[60] *Id*.

of success on appeal even if appellate counsel had argued that trial counsel was deficient for not raising a *Boston* objection at trial.[61]

Liddle then timely appealed the denial of his motion to reopen to the Supreme Court of Ohio.[62]  The State responded in opposition.[63]  On March 26, 2008, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question.[64] Following this decision, the record does not indicate that Liddle then sought a writ of certiorari from the United States Supreme Court.

**D.     Federal habeas petition**

On March 18, 2009, Liddle, again represented by the public defender's office,  filed a timely petition for writ of habeas corpus in this court under 28 U.S.C. § 2254.[65]  Liddle asserted the following ground for relief:

> Ground One:  Mr. Liddle was deprived of the effective assistance of appellate counsel, in violation of the Sixth Amendment and *Strickland v. Washington*, 466 U.S. 688 (1984).[66]
>
> Supporting Facts:  At trial the physician who examined the child victim testified that he observed no physical injuries, yet the physician testified that he found the victim's allegations credible.  Ohio law prohibits bolstering of

---

[61] *Id*. at 272-73.

[62] *Id*. at 279-81.

[63] *Id*. at 310-13.

[64] *Id*. at 316.

[65] ECF # 1.

[66] *Id.* at 6.

witness credibility before a jury; however, Mr. Liddle's appellate counsel failed to object to the trial court's permission of the testimony.[67]

In response, the State filed a return of the writ,[68] essentially asserting that Liddle's habeas application should be denied because he failed to establish that the state court's application of *Strickland* to this claim in its denial of the Rule 26(B) application to reopen was either unreasonable or incorrect.[69]

Liddle in his traverse contends that Dr. Kovalcik's testimony essentially was an assertion as to the credibility of the victim, prohibited by *Boston*, that should have been objected to by defense counsel, but was not because defense counsel was unaware of that prohibition in Ohio law.[70]  In that respect, Liddle argues that it cannot, as the appellate court reasoned, have been a strategic decision of defense counsel to forego objecting to Dr. Kovalcik's testimony in favor of undermining it on cross-examination if counsel did not even know at the time of trial that the testimony was objectionable.[71]  Further, Liddle maintains that the admission of Dr. Kovalcik's testimony prejudiced him at trial because it transformed the case from being "a credibility contest between R.B. and Mr. Liddle" into one "pitting Mr. Liddle against R.B. and a medical expert who had examined victims in

---

[67] *Id.*

[68] ECF # 6.

[69] *Id.* at 15-21.

[70] ECF # 7 at 5-6.

[71] *Id*. at 6.

-14-

'hundreds' of sex abuse cases [and] who found R.B.['s] statements so credible that he based his medical diagnosis on them."[72]

## Discussion

### A.    Preliminary observations

Prior to discussing the claim presented, I note initially, with respect to the statutory bases for federal habeas relief, that there is no dispute that:  (1) Liddle is currently in state custody as a result of his conviction and sentence by an Ohio court,[73] and (2) his petition was filed within one year of his state conviction becoming final.[74]

I further observe that Liddle's petition is fully exhausted.  As the State acknowledges, the single claim presented here was raised in Liddle's Rule 26(B) application as well as in his direct appeal to the Ohio Supreme Court.

Finally, I also observe that Liddle has not requested an evidentiary hearing[75] under the applicable statutory provisions.

### B.    Standard of review

### 1.    *The standards for federal habeas review*

Where a state court adjudicated the merits of a claim now asserted in a federal habeas petition, the controlling federal statute is plain that the federal habeas court may use that

---

[72] *Id.*

[73] 28 U.S.C. § 2254(a).

[74] 28 U.S.C. § 2244(d).

[75] 28 U.S.C. § 2254(e)(2).

claim as a basis for granting the writ only if the state decision was either contrary to clearly established federal law as determined by the United States Supreme Court or was an unreasonable application of that law.[76]

In applying that statute, a federal habeas court is guided by the well-known teachings of *Williams v. Taylor*.[77]  As stated by the United States Supreme Court in *Williams,* a decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."[78] *Williams* further holds that a state court decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[79]

Moreover, a federal court may not find that a state court unreasonably applied clearly established federal law simply because the habeas court "concludes on its independent judgment that the relevant state court decision applied clearly established federal law

---

[76] 28 U.S.C. § 2254(d).

[77] *Williams v. Taylor*, 529 U.S. 362 (2000).

[78] *Id.* at 412.  *Accord*, *Broom v. Mitchell*, 441 F.3d 392, 398 (6th Cir. 2006).

[79] *Williams*, 529 U.S. at 413; *Broom*, 441 F.3d at 398.

-16-

erroneously or incorrectly."[80]  Rather, the state court holding may be disturbed only upon

showing that it was "objectively unreasonable."[81]

## 2.    *Ineffective assistance of appellate counsel*

Under *Strickland v. Washington*,[82] a petitioner establishes ineffective assistance of

counsel by showing first that counsel's performance was deficient and then that this deficient

performance prejudiced the petitioner by rendering the proceeding unfair and the result

unreliable.[83]  Although *Strickland* involved the ineffective assistance of trial counsel, a

comparable test applies to claims of ineffective assistance of appellate counsel.[84]  In either

instance, both prongs of the *Strickland* test must be met in order for the writ to be granted;

thus, courts need not address the issue of competence if the claim can be disposed of for

failure to show prejudice.[85]

In reviewing counsel's performance, the court recognizes that counsel is presumed to

have rendered adequate assistance.[86]  The reviewing court must not engage in hindsight but

---

[80] *Williams*, 529 U.S. at 411.

[81] *Id*. at 409.

[82] *Strickland*, 466 U.S. 668.

[83] *Id*. at 687.

[84] *Bowen v. Foltz*, 763 F.2d 191, 194 (6th Cir. 1985).

[85] *Strickland*, 466 U.S. at 697.

[86] *Id*. at 690.

should evaluate counsel's performance within the context of the circumstances existing at the time of the alleged errors.[87]

The key is not whether counsel's choices were strategic but whether they were reasonable.[88]  To that end, counsel has a duty to make reasonable investigation into possible alternatives but, having done so, will be presumed to have made a reasonable decision in choosing.[89]

In the context of appeal, an appellate attorney need not raise every possible issue on appeal to be effective.[90]  Effective appellate advocacy often requires that the attorney select only the most promising issues for review.[91]  In addition, there can be no ineffectiveness in failing to argue a non-meritorious issue.[92]

With respect to the prejudice prong, the petitioner must show that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have

---

[87] *Id.*

[88] *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).

[89] *Strickland*, 466 U.S. at 691.

[90] *Jones v. Barnes*, 463 U.S. 745, 752 (1983).

[91] *Id.*

[92] *Strickland*, 466 U.S. at 698.

been different.[93]  A reasonable probability is a probability sufficient to undermine confidence in the outcome.[94]

### 3.    *Modified AEDPA deference*

In cases where the state court did not fully address the petitioner's fairly presented constitutional claim in arriving at its decision to deny that claim, that decision is not entitled to full deference from the federal court under the AEDPA rubric.  In such cases, where the state court "does not squarely address the claim, but engages in what resembles the proper constitutional analysis, [the federal habeas court] will review the record and the law, and will reverse [the state court decision] only if [the federal habeas court] determine[s] that the state court decision was contrary to, or an unreasonable application of, clearly established federal law.[95]

Stated differently, where the state court ultimately adjudicated a fairly presented constitutional claim, but did so without fully considering the federal constitutional issue raised by the petitioner, the Sixth Circuit teaches that the federal habeas court should review that state court decision by applying a modified version of AEDPA deference, along the lines set forth in *Maldonado v. Wilson*.[96]  That process, as delineated in *Maldonado*, requires the

---

[93] *Id*. at 694.

[94] *Id.*

[95] *Dyer v. Bowden*, 465 F.3d 280, 284 (6th Cir. 2006), citing *Filiaggi v. Bagley*, 445 F.3d 851, 854 (6th Cir. 2006); *see also*, *Garcia v. Andrews*, 488 F.3d 370, 374 (6th Cir. 2007).

[96] *Vasquez v. Jones*, 496 F.3d 564, 569-70 (6th Cir. 2007), citing *Maldonado v. Wilson*, 416 F.3d 470,  475-76 (6th Cir. 2005).

federal court to first "conduct an independent review of record and applicable law,"[97] followed by applying "the AEDPA standard of whether the state court result is contrary to or unreasonably applies clearly established federal law."[98]

A modified AEDPA review is proper where the issue before the state court concerns whether federal due process rights were violated by the admission of testimony alleged to violate state evidence law and the state court decision was unclear as to whether its "finding was rooted in state evidence law or in federal constitutional law."[99] Thus, the key, as to use of AEDPA deference, is that the state court inquiry – no matter the source – bears some similarity to the inquiry mandated under the applicable clearly established federal law.[100]

## C.    Application of standards

### 1.    Overview

I note first that Liddle argues that Dr. Kovalcik violated the rule in *Boston* on two separate occasions:  (1) testifying at the close of direct examination that, in his opinion based on a reasonable degree of medical certainty, R.B. had been sexually abused;[101] and (2) testifying at the close of recross examination – in response to a question asking what evidence he had looked at in this case that might discount the victim's story – that "I can tell

---

[97] *Maldonado*, 416 F.3d at 476, citing *Harris v. Stovall*, 212 F.3d 940, 943 n.1 (6th Cir.2000).

[98] *Id.*, citing *Harris*, 212 F.3d at 943.

[99] *Id.* at 475, citing *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005).

[100] *Id.* at 476.

[101] *See*, ECF #7, Attachment (transcript of Dr. Kovalcik's testimony) at 471.

you I believe my patients unless I have a reason not to.  I certainly have no reason not to believe her."[102]  Each of these instances will be considered below on their own after setting forth the applicable state law.

In addition, I will recommend that the state appeals court opinion be evaluated under modified AEDPA review.  In particular, I note the following two considerations.

First, although the appellate opinion correctly identified *Strickland* as the applicable standard for Liddle's claim, it proceeded to analyze the deficient performance prong in this case without determining if the testimony at issue was precluded by *Boston*.  If it was precluded, then the testimony was arguably so prejudicial as to warrant reversal on appeal, and defense counsel should have objected at trial.  Instead, the appellate opinion assumed, without establishing, that trial counsel had a valid choice to make between making a *Boston* objection at trial and electing the strategic equivalent of attacking the testimony by cross-examination and hoping to influence the jury's view of its merit.

Second, I also note that the appeals court arrived at its conclusion that an appropriate strategic choice was made in this case without finding any evidence in the record that defense counsel had made that choice, as *Strickland* requires, after making a reasonable investigation into possible alternatives.[103]  In fact, as Liddle maintains in the traverse, there is nothing in the record demonstrating "that trial counsel was even aware that [*Boston*] existed, let alone

---

[102] *Id.* at 485-86.

[103] *Strickland*, 466 U.S. at 691.

that he made an affirmative, reasonable decision not to invoke that case to his client's benefit."[104]

The Ohio appeals court here failed to apply that component of *Strickland*, which holds that apparently deficient actions of counsel can be excused as a strategic choice only after making the predicate finding that counsel made such a decision after conducting a reasonable investigation into possible alternatives.  In this case, applying that rule would have meant the appeals court would not have made the finding that the failure of Liddle's defense counsel to lodge a *Boston* objection at trial was a strategic choice until it had first found that Liddle's attorney had reasonably investigated, but then rejected, the option of objecting to Dr. Kovalcik's testimony rather than attacking it on cross-examination.

Because the state court correctly identified *Strickland* as the governing federal law, but then did not fully apply that law in making its decision to deny Liddle's claim, I recommend that the decision should be evaluated here under modified AEDPA review.

## 2.    *State law on admissibility of expert testimony in child abuse cases*

In *State v. Stowers*,[105] the Supreme Court of Ohio examined the issue – similar to here – of whether, under *Boston*, an expert witness may testify in a case of alleged child sexual abuse that the child has been abused.  The court concluded that *Boston* does not prohibit such testimony.  In particular, the court characterized *Boston*'s teaching as follows:

---

[104] ECF # 7 at 5.

[105] *State v. Stowers*, 81 Ohio St. 3d 260, 690 N.E.2d 881 (1998).

-22-

*Boston*'s syllabus excludes expert testimony offering an opinion as to the truth of a child's statements (*e.g.*, the child does not appear to be fantasizing or to have been programmed, or is or is not truthful in accusing a particular person).  It does not proscribe testimony which is additional support for the truth of the *facts testified to* by the child, or which assists the fact finder in assessing the chid's veracity.[106]

In that regard, *Stowers* itself highlighted that the Ohio Supreme Court had earlier stated, in construing *Boston*, "'that expert testimony on the ultimate issue of whether sexual abuse has occurred in a particular case is helpful to jurors and is therefore admissible pursuant to Evid. R. 702 and 704.'"[107]

This principle of Ohio law that a treating physician with specialized experience in cases of child sexual abuse may properly offer an opinion as to whether the child has been abused was relied on by Judge Nugent of this Court in denying a petition for habeas relief in *Crum v. Bobby*.[108]  In *Crum*, the habeas petitioner argued that he was denied a fair trial when the trial court admitted expert  testimony from a treating psychologist that the victim had been sexually abused.[109]  The federal habeas court then quoted from the detailed review of relevant Ohio law undertaken by the state appeals court in that case:

We have previously considered the admissibility of the opinion of a treating psychologist in cases of alleged child abuse ....  [In that case], we held that the opinion of a treating psychologist that a child has been sexually abused is admissible. Upon revisiting our decision [in that prior case], we find its

---

[106] *Id.* at 262-63, 690 N.E.2d at 884 (emphasis original).

[107] *Id.* at 261, 690 N.E.2d at 883, quoting *State v. Gersin*, 76 Ohio St. 3d 491, 494, 668 N.E.2d 486, 488 (1996), citing *Boston*.

[108] *Crum v. Bobby*, No. 5:07-cv-949, 2008 WL 2048000 (N.D. Ohio May 12, 2008).

[109] *Id.*, at *19.

reasoning remains persuasive.  The observations and interactions which typically form the basis for the psychologist's opinion [that] a child has been abused fall well within the parameters set by Evid. R. 703.[110]

As the state court in *Crum* explained further, while a treating physician's observations during treatment of a child alleging sexual abuse are "'necessarily subjective and unquantifiable,'"[111] they are, nonetheless, admissible on the issue of whether abuse has occurred since they are based on the expert's "'specialized experience in the field of child sexual abuse'" as applied to interaction with the particular victim.[112]

In practice, as the Ohio appeals court recently noted in *State v. Britta*:[113]

> [T]he decision of whether to allow an expert to offer an opinion on the issue of whether abuse has occurred often turns on the foundation of the expert's opinion.  While there must not always be "physical evidence present before an expert can render a valid opinion on whether a child has been sexually abused ***, there simply has to be something other than the child's unsupported allegations that assisted the expert in arriving at his or her opinion."[114]

*Britta* states that, in place of supporting physical evidence of abuse, an expert may support a conclusion of abuse by relying instead on "'the expert's observations of the child's physical demeanor or other indicators tending to show the presence of sexual abuse.'"[115]

---

[110] *Id.*, at *20, quoting *State v. Crum*, 1998 WL 818055 (Ohio Ct. App. Oct. 26, 1998).

[111] *Id.*

[112] *Id.*

[113] *State v. Britta*, No. 2009-L-017, 2010 WL 891357 (Ohio Ct. App. Mar. 12, 2010).

[114] *Id.*, at *7 (citations omitted).

[115] *Id.* (citation omitted).

Stated differently, Ohio law, as set forth by this Court in *Crum*, permits an expert, based on his "'observations of a  child's actions and statements,'"[116] to  "'offer[] an opinion concerning whether [the victim] had been sexually abused based on his educated observation.'"[117]

More precisely, the critical distinction in Ohio is that an expert may not offer an opinion that abuse has occurred if that opinion rests solely on the testimony of the alleged victim.[118]  In such circumstances, Ohio courts have found the testimony violates *Boston* as being "'tantamount to permitting the expert to testify as to the child's veracity.'"[119]  Thus, to be admissible, such an expert opinion that abuse has occurred must be "'based upon all the data [the expert] had in front of him, [and] not just on the victim's statements ....'"[120]

3.     ***Nature of the harm if a Boston violation occurs***

As explained by the Ohio appeals court in *State v. Miller*,[121] the admission of testimony violating *Boston* is evaluated for whether that error was harmless beyond a

---

[116] *Crum*, 2008 WL 2048000, at *20, quoting *Crum*, 1998 WL 818055.

[117] *Id.*

[118] *Britta*, 2010 WL 891357, at *8 (collecting cases, citations omitted).

[119] *Id.* , quoting *State v. Johnson*, No. 90961, 2008 WL 5259722, at *4 (Ohio Ct. App. Dec. 18, 2008).

[120] *Britta*, 2010 WL 891357, at *8, quoting *State v. Muhleka*, No. CIV.A. 19827, 2004 WL 759249, at *4 (Ohio Ct. App. April 9, 2004).

[121] *State v. Miller*, No. 18102, 2001 WL 62793 (Ohio Ct. App. Jan. 26, 2001).

reasonable doubt.[122]  Ohio cases applying this rule have developed the following factors to consider when determining if a *Boston* error was harmless:

> The erroneous admission of statements in violation of *Boston* is more likely to be harmless if the case involved a bench trial instead of a jury trial. Further, the erroneous admission of statements in violation of *Boston* is more likely to be prejudicial if the case was essentially a 'credibility contest' between the victim and the defendant without independent evidence of the alleged crimes.  [In addition,] the admission of statements in violation of *Boston* can be harmless   'if the victim testifies and is subject to cross-examination, the state introduces substantial medical evidence of sexual abuse, and the expert's testimony is cumulative to the other evidence.'[123]

In the context of a federal habeas claim of ineffective assistance of counsel, however, Judge Zouhary of this Court concluded in *Stevenson v. Bobby* that the state appeals court reasonably determined that no prejudice occurred when the challenged testimony of a physician in a child sexual abuse case – alleged to violate *Boston* – was merely cumulative of "other, independent evidence of defendant's guilt."[124]  Significantly, the *Stevenson* court noted that because the claim arose in the context of ineffective assistance, the test would be the *Strickland* standard of whether the petitioner could show that there was a reasonable probability that, but for counsel's error in not objecting to this testimony, the result of the

---

[122] *Id.*, at *6.

[123] *Id.* (citations omitted), quoting *State v. Kincaid*, Nos. 94CA005942, 94CA005945, 1995 WL 608407 (Ohio Ct. App. Oct. 18, 1995).

[124] *Stevenson v. Bobby*, No. 5:07-cv-1343, 2008 WL 4619757, at *2 (N.D. Ohio Oct. 28, 2008).

-26-

proceeding would have been different, and not whether the admitting the testimony was harmless beyond a reasonable doubt.[125]

### 4.     Application – there was no Boston violation in Dr. Kovalcik's direct testimony

Here, the circumstances of Dr. Kovalcik's direct testimony offering an opinion that R.B. had been abused is virtually identical to the psychologist's testimony in the federal habeas case of *Crum* where such testimony was held not to violate *Boston*.  In this case, the following sequence took place during direct examination that laid the foundation for Dr. Kovalcik's testimony:

- Dr. Kovalcik was presented as an expert in child sexual abuse;[126]

- Following the introduction of his qualifications, Dr. Kovalcik related the details of personal notes he made while observing a taped interview of R.B. with a social worker;[127]

- Then, Dr. Kovalcik testified to reviewing a history from the victim's father, specifically telling the jury that his taking such a history from someone other than the victim permits him in his capacity as an expert in child sexual abuse cases to "get a sense of behavioral indicators, things that may be going on that are, you know, sometimes nonspecific,

---

[125] *Id.*, at *11; *accord*, *State v. Fitch*, No. 2002-CA-5, 2003 WL 139761, at *10 n.7 (Ohio Ct. App. Jan. 17, 2003).  Despite the normal process of considering a *Boston* violation in terms of whether the admission of such testimony was harmless beyond a reasonable doubt, where the alleged *Boston* violation "comes to us in the context of an ineffective assistance of counsel claim, ... the question is whether [defendant] has shown a reasonable probability that, but for his attorney's error, the result of his trial would have been different. Based on the substantial evidence against [defendant], we conclude he has failed to make such a showing."

[126] ECF # 7, Attachment (transcript of testimony of Dr. Kovalcik) at 451-53.

[127] *Id.* at 454-57.

-27-

but can give you another clue that something traumatic may have happened to the child;"[128]

- In addition to both observing an interview with R.B., and considering a family history from her father, Dr. Kovalcik testified that he physically examined R.B.;[129]

- Finally, only after testifying to all of the above, was Dr. Kovalcik asked if, "in light of your training and experience and education and expertise in the study of sexual abuse of children, taking into account the history and the medical examination of R.B.," whether he had an opinion based on a reasonable degree of medical certainty as to whether or not she was sexually abused.[130]  Dr. Kovalcik testified in response to that question: "Yes.  I feel that she was sexually abused."[131]

This testimony, and the evidence specifically related by the prosecution as the basis for the testimony, closely tracks what Ohio courts teach is fully permissible for an expert opinion on the ultimate issue of whether abuse has taken place.

Liddle, in his traverse, however, does not acknowledge the Ohio law, stated above, that permits an expert to testify as to whether abuse has occurred if that opinion is grounded on more than simply the victim's own testimony.  Instead, Liddle seems to argue that Dr. Kovalcik's conclusion of abuse in this instance was based on nothing more than the victim's own statement alleging abuse, thus constituting impermissible vouching testimony under *Boston*.[132]  In fact, as noted above, Dr. Kovalcik's conclusion that R.B. had been

---

[128] *Id.* at 458.

[129] *Id.* at 467-70

[130] *Id.* at 470-71.

[131] *Id.* at 471.

[132] ECF # 7 at 3.

abused was based on his expertise with hundreds of victims of child abuse, actually physically observing R.B. in her interview with the social worker, taking a family history from her father, and conducting a physical examination – all data the expert had in front of him in addition to  R.B.'s own statement that she was abused.

While none of those other evaluation techniques apparently yielded any additional, independent physical evidence of abuse, it is wholly incorrect as a matter of Ohio law to then state, as Liddle does here, that  Dr. Kovalcik's testimony was "based *solely*"[133] on R.B.'s own account and so was impermissible.  As noted, Ohio permits an expert "'to offer an opinion concerning whether [the victim] had been sexually abused based on his educated observations,'"[134] provided that those observations include more than the victim's own testimony.  Here, Dr. Kovalcik's "educated observation" was that R.B. had been sexually abused and rested on all the evidentiary factors related earlier considered in light of his professional experience and expertise.[135]

As such, I recommend finding under modified AEDPA review, in the absence of any direct determination of this issue by the Ohio appeals court, that Dr. Kovalcik's testimony in this regard was permissible under *Boston*.  Consequently, if Dr. Kovalcik's testimony here

---

[133] *Id.*(emphasis orignal).

[134] *Crum*, 2008 WL 2048000, at *20 (quoting *Crum*, 1998 WL 818055).

[135] *See*, *Jordan v. Bobby*, No. 2:08-cv-0632, 2009 WL 4730220, at *9 (S.D. Ohio Dec. 2, 2009) (quoting *State v. Jordan*, No. 6 HA 586, 2007 WL 1880029, at *4 (Ohio Ct. App. June 22, 2007)).  Testimony of expert that child's claim of abuse was "substantiated" was permissible expert testimony where it was based on more than the victim's statements and also relied on the results of a physical examination, the victim's demeanor, and the expert's experience in dealing with "many" abused children.

was not improper as a matter of Ohio law, I further recommend finding that under the federal law test of *Strickland*, Liddle's defense counsel at trial cannot be ineffective for not objecting to this proper testimony, nor could Liddle have been prejudiced by the admission of this testimony.

Thus, on the ultimate question of whether, under *Strickland*, Liddle received ineffective assistance of appellate counsel for not raising this issue on appeal, I recommend denying this aspect of the claim inasmuch as the conclusion of the state court denying this portion of the claim was neither contrary to, nor an unreasonable application of *Strickland*.

**5.      *Application – there was no Boston violation in Dr. Kovalcik's testimony during re-cross-examination***

I further note briefly that Liddle's other example of impermissible testimony by Dr. Kovalcik  is also unavailing.

After his direct examination, which concluded with his expert opinion that R.B. was abused, Dr. Kovalcik was cross-examined by Liddle's defense counsel.    On re-cross-examination, Liddle's attorney was pursuing the implications that might follow from the fact that a person alleging abuse did not have any physical evidence of abuse.

Specifically, Dr. Kovalcik was asked "under what circumstances would your overall assessment be 'no indication of abuse' assuming [your patient] alleged [abuse]?"[136] Dr. Kovalcik stated in response that he would conclude there had been no abuse in the absence of physical evidence if "[the] victim was inconsistent in her story, if there was other

---

[136] ECF # 7, Attachment at 485.

evidence to discount her story, or ..."[137]  Dr. Kovalcik was in the process of stating the circumstances that would cause him to conclude there had been no abuse when defense counsel interrupted to ask:  "What other evidence did you look at in this case?"[138] Dr. Kovalcik replied:  "Well, I can tell you that I believe my patients unless I have a reason not to.  I certainly have no reason not to believe her."[139]  After getting Dr. Kovalcik to agree that he spent just 15 minutes directly with R.B.,[140] the re-cross-examination ended with no further questions from the prosecution or from the jury.[141]

 With respect to this particular testimony on re-cross-examination, I note initially that the state appeals court, similar to its actions concerning the other testimony addressed above, did not specifically consider whether this testimony violated the rule in *Boston*. Consequently, in order to comprehensively determine if Liddle's appellate counsel was constitutionally deficient under the teaching of *Strickland* in not raising this as error, this Court must apply a modified AEDPA deference to the decision of the Ohio court and begin its evaluation of the applicable law by considering whether *Boston* was violated by this testimony.

---

[137] *Id.*

[138] *Id.*

[139] *Id.* at 485-86.

[140] *Id.* at 486.

[141] *Id.*

As was explained by the Ohio appeals court addressing a similar situation in *State v. Burrell*,[142] where an expert has given an opinion as to the occurrence of sexual abuse on direct examination along with foundation for that opinion in underlying facts and data, it is "appropriate" for the defendant on cross-examination "to further explore that foundation."[143] Like here, the court in *Burrell* noted that the cross-examination went to "whether the only foundation for [the expert's] opinion was, in fact, a subsidiary opinion that [the victim] had been truthful in relating her story to him."[144]

In such a context, a statement by the expert in response to a question as to the foundation of the opinion would not be seen as the defendant improperly inviting an error – such invited error testimony being usually considered harmless for being induced.[145] Rather, such testimony would be viewed as the defendant "properly exploring whether the opinion expressed by [the expert] on direct examination was supported by an appropriate foundation."[146] Thus, as the *Burrell* court observed, should an expert's response during such cross-examination yield evidence that his opinion given on direct examination was improperly based only on his belief in the veracity of the victim, the *Boston* error would not consist in the response on cross-examination that the expert believed the victim but, rather,

---

[142] *State v. Burrell*, 627 N.E.2d 605 (Ohio Ct. App. 1993).

[143] *Id.* at 610.

[144] *Id.*

[145] *Id.*

[146] *Id.*

would exist in illuminating that a *Boston* error had occurred in the opinion previously given on direct examination without a proper foundation.[147]

Here, the predicate circumstances to Dr. Kovalcik's testimony on re-cross-examination are virtually identical to those in *Burrell*. However, unlike in *Burrell*, the re-cross-examination here did not yield proof that Dr. Kovalcik's opinion in direct examination was based solely on his belief in the credibility of the victim and so was error under *Boston*. Most significantly, Liddle's defense counsel merely established that the reason Dr. Kovalcik did not seek additional evidence discrediting R.B. was that he had no reason not to believe her.[148] He did not establish, directly or indirectly, that Dr. Kovalcik's belief in R.B.'s truthfulness was the sole basis for the opinion given on direct examination that she had been abused – an admission that would have potentially triggered a finding that the prior opinion testimony had violated *Boston*.

Moreover, as the opinion in *Burrell* plainly teaches, Dr. Kovalcik's testimony on re-cross-examination that he had no reason to doubt R.B. and seek evidence discounting her story certainly does not constitute an independent, stand-alone *Boston* violation as Liddle appears to argue.

Accordingly, I recommend finding that this testimony on re-cross-examination does not violate *Boston* since it did not undermine the foundation for the opinion given on direct examination, which, as noted earlier, was supported by more than the expert's belief in

---

[147] *Id.*

[148] *See*, ECF # 7, Attachment at 485.

-33-

R.B.'s truthfulness.  Thus, if this testimony does not violate *Boston*, I further recommend that this aspect of Liddle's habeas claim also be denied since the decision of the state court in this respect was neither contrary to, nor an unreasonable application of, *Strickland* in that no ineffective assistance can occur on appeal for failing to object to proper testimony and there can be no prejudice from admitting such testimony.

**6.    Even if the Court should conclude that a Boston error occurred in either Dr. Kovalcik's direct testimony or on re-cross-examination, Liddle has not shown, under Strickland, that the state appeals court unreasonably found that, but for his counsel's failure to object to that testimony, the results at trial would not have been different.**

As noted, the state court addressed the deficient performance prong of *Strickland*  by determining that Liddle's trial counsel had made a tactical decision not to raise a *Boston* objection but, rather, to attack Dr. Kovalcik's testimony through cross-examination.  The appeals court then concluded, under the second element of *Strickland*, that the testimony at issue had not been prejudicial to Liddle.   Specifically, the appellate court stated as to prejudice:

> [I]n light of significant corroborating evidence before the jury, we also find that [Liddle] has failed to demonstrate that there was a reasonable probability of success  had the claim [of a *Boston* violation] been presented on appeal.  The state's theory of the case was supported by additional evidence from the investigating officer and from the victim's two sisters.   The investigating officer testified that [Liddle] "basically *** admitted" to committing the charged crimes during an interview.  The oldest sister testified that [Liddle] made her uncomfortable with his advances toward her and that she had observed [Liddle] holding the victim on his lap, giving her backrubs, and giving her "lingering" kisses.  Finally, the middle sister testified that [Liddle] had held the victim and herself on his lap, rubbed their backs under their shirts and kissed them inappropriately.  In addition, the middle sister stated that she once witnessed the victim with restraints on her legs and insisted that Liddle take them off immediately.  In light of this corroborating

evidence, we cannot conclude that but for the challenged matter, the result would have been different.[149]

Moreover, I note that, in addition to the evidence recited by the state appeals court in its opinion, there was testimony at trial, not raised here by Liddle as violating *Boston*, from Jeannette Behm, a licensed counselor with 35 years of experience, that "R.B. was embarrassed to discuss the digital penetration initially, but eventually admitted to two occasions of digital penetration by Liddle."[150] Furthermore, also not cited by the appellate opinion nor objected to by Liddle, there was testimony at trial from "medical social worker" Dianne Russo, who was qualified as a person with "specialized training in the prevention and detection of child abuse and sexual abuse," that R.B. had been "a victim of sexual abuse."[151]

In light of the evidence highlighted by the appeals court, as well as the evidence from Jeannette Behm that R.B told her she had been digitally penetrated twice by Liddle, and from Diane Russo that R.B. had been a "victim of sexual abuse," I recommend finding that the state appeals court here did not unreasonably apply the second prong of *Strickland* in concluding that, in light of such strong, corroborating evidence of Liddle's guilt, there was no prejudice from any testimony by Dr. Kovalcik.[152]

---

[149] *Id.* at 272-73.

[150] *Id.* at 75.

[151] *Id.* at 74-75.

[152] *See*, *Stevenson*, 2008 WL 4619757, at *11 ("The state appellate court's finding – that the admission of the Brandi's interview statements through Dr. Tener was non-prejudicial because the testimony merely repeated the testimony of the victim – does not constitute an unreasonable application of the *Strickland* prejudice test.").

## Conclusion

For the foregoing reasons, I recommend that the petition of John Liddle for a writ of habeas corpus under 28 U.S.C. § 2254 be denied inasmuch as the decision of the state court, which denied this claim, was not contrary to or an unreasonable application of clearly established federal law when analyzed under a modified AEDPA  standard of review.

Dated:   May 28, 2010                            s/ William H. Baughman, Jr.
                                                 United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[153]

---

[153] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).