UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                            :
JOHN E. LIDDLE,                             :   CASE NO. 5:09-CV-00587
                                            :
            Petitioner,                     :
                                            :
vs.                                         :   ORDER & OPINION
                                            :   [Resolving Doc. Nos. 1, 8, 11]
TIMOTHY BRUNSMAN, Warden,                   :
                                            :
            Respondent.                     :
                                            :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

John Liddle petitions for a writ of habeas corpus under 28 U.S.C § 2254. [Doc. 1.] With his petition, Liddle seeks relief from the life sentence that an Ohio state court imposed following his conviction on two counts of rape and two counts of gross sexual imposition. [Doc. 1.] On May 28, 2010, Magistrate Judge William H. Baughman, Jr. filed a Report and Recommendation that recommends the Court deny Petitioner's writ. [Doc. 8.] Petitioner Liddle objects. [Doc. 11.] For the reasons below, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** Liddle's petition for a writ of habeas corpus.

**I. Background**

In his habeas petition, Liddle says that his trial and appellate counsel were constitutionally ineffective. In 2005, a jury found Liddle guilty of sexually assaulting R.B., the minor daughter of the woman he lived with. At trial, Liddle's counsel did not object to certain testimony of a pediatric

-1-

Case No. 5:09-CV-00587
Gwin, J.

physician. Petitioner Liddle now claims that the physician's expert opinion that R.B. had been abused and testimony—"I believe my patients unless I have a reason not to. I certainly have no reason to not believe [R.B.]"—improperly vouched for the victim's credibility in violation of *State v. Boston*, 545 N.E.2d. 1220 (Ohio 1989). [Doc. 1 at 2-3.] Liddle says that his trial attorney was constitutionally deficient for failing to object to this testimony. Liddle also says his appellate counsel was ineffective for failing to argue that trial counsel had been ineffective when trial counsel failed to object to this testimony. [Doc. 1 at 3.]

Liddle lived with R.B.'s family—R.B's two older sisters, mother, and grandmother—from 1994 until 2000. R.B. was four years old when Liddle moved in. In 2000, R.B. told her mother and grandmother something about her experience with Liddle that resulted in them telling Liddle to move out, although neither filed a police report. [Doc. 8 at 4.] Later, when R.B.'s father sought custody of R.B. in 2004, she told him that Liddle had sexually abused her for years. [Doc. 8 at 4.] The father contacted the police and initiated treatment. [Doc. 8 at 4.]

R.B., then fourteen, testified at Liddle's trial. R.B. explained how Liddle gained her trust, such that she viewed Liddle as a father-figure and hoped that Liddle would someday marry her mother. [Doc. 8 at 4.] Beginning when she was four, R.B. continued, Liddle would place his hands under her clothing to touch her bare skin on her private parts, including her chest, butt, and vaginal area, removing his hands if someone came in the room. [Doc. 8 at 5.] R.B. testified that Liddle inserted his finger into her vagina on two occasions and also asked her to touch his penis over his clothes, later urging her not to tell. [Doc. 8 at 5.]

R.B. explained how Liddle took advantage of her youth. Liddle "kissed her on the lips and neck and asked her to do the same." It was not until she was older, R.B. recalled, that she realized

Case No. 5:09-CV-00587
Gwin, J.

Liddle's kisses were longer and more intimate—more like a boyfriend and less like a relative. [Doc. 8 at 5.] R.B. also recounted how Liddle made her play "cops and robbers." During these games, R.B. testified, Liddle used handcuffs or metal bars with leather straps to restrain her arms and hold her legs apart. [Doc. 8 at 5.]

R.B.'s two older sisters testified in support of her account. The eldest sister testified that Liddle's lingering kisses—not "just a peck"—made her uncomfortable. [Doc. 8 at 7.] She also testified that she told Liddle that his behavior was inappropriate. [Doc. 8 at 7.] The middle sister testified that after she witnessed Liddle handcuffing R.B. she urged R.B to "tell [their mother] the rest." [Doc. 8 at 7.] For his part, Liddle admitted to kissing and hugging the girls and owning handcuffs, but testified that his behavior was normal and that the handcuffs were not "sex toys." [Doc. 8 at 7.]

Other witnesses buttressed R.B.'s allegations. A police detective testified that during his investigation Liddle "basically admitted" the touching and digital penetration. [Doc. 8 at 6.]

A pediatric physician who examined and treated R.B. also testified, and his testimony is the basis of Liddle's habeas petition. After being qualified as a child abuse expert, the physician testified that with a reasonable degree of medical certainty "I feel that she was sexually abused." [Doc. 8 at 28.] The physician based his opinion on (1) his experiences with "hundreds" of sexually abused children, (2) a family history taken report from R.B.'s real father, and (3) his observations of R.B. during her interview with a medical social worker. [Doc. 8 at 6.] The physician had earlier physically examined R.B. but found no physical evidence of abuse. This was to be expected, the physician explained at trial, because the abuse occurred five or six years before his examination. [Doc. 8 at 6, 29.] On re-cross examination, Liddle's trial counsel asked "[w]hat other evidence did

-3-

Case No. 5:09-CV-00587
Gwin, J.

you look at in this case?" Responding, the physician testified "[w]ell, I can tell you I believe my patients unless I have a reason not to. I certainly have no reason to not believe [R.B.]" [Doc. 11 at 4.] Liddle's counsel did not object.

Following his conviction and direct appeals, Liddle petitioned this Court for a writ of habeas corpus. On May 28, 2010, Magistrate Judge Baughman issued a Report and Recommendation recommending that the Court deny Liddle's petition. [Doc. 8.] Applying the modified Antiterrorism and Effective Death Penalty Act ("AEDPA") standard set forth in *Maldonado v. Wilson*, 416 F.3d 470 (6th Cir. 2005), Magistrate Judge Baughman found that (1) the physician's opinion testimony did not violate the Ohio Supreme Court's decision in *State v. Boston*, and (2) even if the testimony was inadmissible and counsel's performance deficient for not objecting to it, Liddle was not prejudiced under *Strickland v. Washington*, 466 U.S. 668 (1984). [Doc. 8 at 27-34.] Liddle objects to these findings and says the physicians opinion testimony was "nothing more than improper vouching for R.B.'s credibility" and competent counsel would have objected. [Doc. 11 at 4-5.]

## II. Legal Standard

The Federal Magistrates Act requires a district court to conduct a *de novo* review only of those portions of a Report and Recommendation to which the parties object. 28 U.S.C. § 636(b)(1). Petitioner Liddle objects to both of the Magistrate Judge's recommendations, and this Court therefore reviews these objections *de novo*. Neither party, however, objects to the Magistrate Judge's use of the modified-AEDPA standard set forth in *Maldonado v. Wilson*.

The AEDPA provides that federal courts cannot grant a habeas petition for any claim that the state court adjudicated on the merits unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined

Case No. 5:09-CV-00587
Gwin, J.

by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under *Maldonado v. Wilson*, however, when an appellant properly raises a claim in state court, yet that court did not review the claim's merits, traditional AEDPA deference does not apply, and the federal habeas court reviews the underlying issue *de novo*. *Maldonado*, 416 F.3d at 475-76; *see also Vasquez v. Jones*, 496 F.3d 564, 570 (6th Cir. 2007). Under this standard, the court conducts a "careful" and "independent" review of the record and applicable law, but cannot reverse "unless the state court's decision is contrary to or an unreasonable application of federal law." *Maldonado*, 416 F.3d at 476.

In this case, the Magistrate Judge reviewed Petitioner's claim that the physician's testimony violated *State v. Boston* under the modified, pro-petitioner AEDPA standard. In reaching this result, Magistrate Judge Baughman found that "the [state] appellate opinion . . . proceeded to analyze the deficient performance prong . . . without determining if the testimony at issue was precluded by *Boston*." [Doc. 8 at 21.] If that testimony was precluded, the Magistrate Judge continues, "then the testimony was arguably so prejudicial as to warrant reversal on appeal, and defense counsel should have objected at trial." [Doc. 8 at 21.]

The Court need not dwell on whether the Magistrate Judge applied the correct standard of review for two reasons. First, the traditional and modified AEDPA standards are largely the same. *See Miller v. Stovall*, 608 F.3d 913, 922 n.6 (6th Cir. 2010) ("It could be questioned whether this court took a wrong turn in concocting modified AEDPA deference, as the standard looks indistinguishable from regular AEDPA deference . . ."). Second, neither party has objected to the

Case No. 5:09-CV-00587
Gwin, J.

Magistrate Judge's application of modified AEDPA deference. The Court therefore will examine Petitioner's *State v. Boston* claim under the so-called *Maldonado* standard, noting that under either standard the result is the same.

### III. Analysis

Petitioner Liddle says his trial and appellate counsel were constitutionally ineffective. Specifically, Liddle says that his trial attorney was constitutionally deficient for failing to object to the physician's testimony. [Doc. 11 at 2-5.] Liddle argues that the physician's opinion that R.B. had been abused and testimony "I believe my patients unless I have a reason not to. I certainly have no reason to not believe [R.B.]" improperly vouched for the credibility of R.B. [Doc. 11 at 2-5.] Petitioner also says his appellate counsel was deficient for not raising this issue on appeal. [Doc. 11 at 5-6.]

### A. First Objection: The Physician's Testimony Did Not Violate **State v. Boston**

An expert *can* opine on whether he or she believes that a child has been sexually abused. *Boston*, 545 N.E.2d at 1239-40. However, an expert *cannot* give an opinion of the veracity of the statements of a child declarant:

> *Boston's* syllabus excludes expert testimony offering an opinion as to the truth of a child's statements (e.g., the child does or does not appear to be fantasizing or to have been programmed, or is or is not truthful in accusing a particular person). It does not proscribe testimony which is additional support for the truth of the facts testified to by the child, or which assists the fact finder in assessing the child's veracity.

*State v. Stowers*, 690 N.E.2d 881, 884 (Ohio 1998). The Ohio Supreme Court has been careful to differentiate "between expert testimony that a child witness is telling the truth and evidence which bolsters a child's credibility." *Id*. The former is inadmissible, while the latter is permissible. Thus, an expert can testify that a child's behavior is consistent with the behavior of other children who had

-6-

Case No. 5:09-CV-00587
Gwin, J.

been sexually abused so long as there is "something other than the child's unsupported allegations that assisted the expert in arriving at his or her opinion." *State v. Schewirey*, 2006 WL 3849292, *8 (Ohio App. 7th Dist. Dec. 20, 2006) (citation omitted).

In this case, contrary to Petitioner's assertions, the physician did not merely testify to the veracity of R.B nor did he rely solely on R.B.'s accusations. The physician offered testimony which was derived from his experiences with hundreds of sexually abused children, a family history report, and his observation of R.B's interview with a counselor. While necessarily somewhat subjective, the Court finds the physician's opinions grounded in experience and observation. In addition, that the physician stated that he believes his patients absent "a reason not to" does not render his opinions improper. Rather, it simply went to part of the foundation for the physician's testimony—that is, how this victim compared to his experiences with more than two hundred sexually abused children. *See id.* at *6 (an expert can testify that a child's behavior is consistent with the behavior of other children who had been sexually abused).

Of course, the physician's opinion was not derived from physical evidence—recall, R.B. was not treated until four years after the abuse. However, "an expert does not need physical findings to reach a diagnosis. If the expert relies on other facts in addition to the child's statements, then the expert's opinion will not be an improper statement on the child's veracity." *Id.* at *4; *see also State v. Muhleka*, 2004 WL 759249, *4 (Ohio App. 2d Dist. Apr. 9, 2004) (allowing expert opinion that child was sexually abused despite lack of physical evidence where expert relied on his examination of the victim, a family history report, information he received from victim's mother and a child services investigator, a review of the victim's drawing, and his past experience of dealing with approximately two hundred sexually abused children). Thus, in the absence of a direct determination

-7-

Case No. 5:09-CV-00587
Gwin, J.

of this issue by the Ohio appeals court, the Court applies the *Maldonado* standard and finds that the physician's testimony was permissible under *State v. Boston*.

### B. Second Objection: Petitioner Was Not Denied Effective Assistance of Counsel

Liddle says his trial and appellate attorneys were constitutionally ineffective. A claim of ineffective assistance of counsel is assessed according to the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Stickland*, the Supreme Court held that a defendant must fulfill a two-part test in order to demonstrate a Sixth Amendment violation due to ineffective counsel: (1) "The defendant must show that counsel's performance was deficient" and (2) "the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687.

Here, having already determined that the physician's testimony did not violate *State v. Boston* and was otherwise permissible, Petitioner's attorneys did not give deficient representation for failing to object or assign error to admissible testimony. This finding alone defeats Liddle's ineffective assistance claim. Moreover, as the state appeals court concluded, Liddle also cannot show prejudice:

> [I]n light of significant corroborating evidence before the jury, we also find that Liddle has failed to demonstrate that there was a reasonable probability of success had the claim [of a Boston violation] been presented on appeal. The state's theory . . . was supported by additional evidence from the investigating officer and from the victim's two sisters. . . . [W]e cannot conclude that but for the challenged matter, the result would have been different.

[Doc. 8 at 34.] Upon review, the Court finds that the state appeals court's decision is neither contrary to nor an unreasonable application of *Strickland v. Washington*.

Accordingly, Petitioner Liddle is not entitled to relief on his ineffective assistance claim because Liddle's counsel's performance was not deficient and Liddle was not prejudiced.

### IV. Conclusion

For the foregoing reasons, this Court **ADOPTS** the Report and Recommendation of

-8-

Case No. 5:09-CV-00587
Gwin, J.

Magistrate Judge Baughman and **DENIES** Liddle's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision could not be taken in good faith and no basis exists upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)

    IT IS SO ORDERED.


Dated: November 19, 2010          s/ *James S. Gwin*
                                                         JAMES S. GWIN
                                                         UNITED STATES DISTRICT JUDGE